**DISTRICT OF COLUMBIA NATIONAL BANK, Washington, Petitioner,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

**No. 18999.**

United States Court of Appeals District of Columbia Circuit.

Argued April 30, 1965.

Decided July 12, 1965.

Mr. Richard Schifter, Washington, D. C., with whom Mr. Alan L. Wurtzel, Washington, D. C., was on the brief, for petitioner.

Mr. Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Peter H. Wolf, Asst. Corp. Counsel, were on the brief, for respondent.

Before WASHINGTON, BURGER and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge.

The issue in this case is whether a national bank doing business within the District of Columbia is subject to the gross earnings tax imposed by 47 D.C. Code sec. 1703.[1] The District of Columbia Tax Court held that it is, and we affirm. We reject the argument of appellant, a national bank organized in 1962, that national banks are subject not to said gross earnings tax, but instead are governed only by the District of Columbia corporation franchise tax measured by net income. The questions raised by appellant are substantial enough to merit attention, but we believe that in the last analysis the solution of the problem encountered by appellant must be provided by Congress, rather than this court.

1. Appellant contends that the provisions of the District of Columbia Code purporting to lay a gross earnings tax on national banks may not be accorded such application in view of 12 U.S.C. § 548, a section which derives from R.S. § 5219 and provides: "The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits." That section provides that the States may tax the shares, or include dividends thereon in taxable income of the recipient, or tax the banks on their net income or on a basis according to or measured by their net income. It does not provide for taxation on the basis of gross income.

In Hamilton National Bank v. District of Columbia, 81 U.S.App.D.C. 200, 156 F.2d 843 (1946), we upheld the taxation of national banks doing business within the District of Columbia upon the basis of a percentage of gross earnings. We disposed of R.S. § 5219 as follows: "But that statute is addressed to the legislature of the states, and the statutes with which we are concerned are acts of the Congress."

Appellant contends, however, that this 1946 decision cannot continue in view of the Act of September 8, 1959, 73 Stat. 458, which provides, 12 U.S.C. § 42: "The provisions of all Acts of Congress relating to national banks shall apply in the several States, the District of Columbia, the several Territories and possessions of the United States, and the Commonwealth of Puerto Rico."

The parties duel with canons of construction. Appellant thrusts with the oldest of them all, that a statute must be construed in accordance with the plain meaning of the language used. It contends that under 12 U.S.C. § 42, *all* provisions of the national banking acts are applicable within the District of Columbia, that "all" includes 12 U.S.C. § 548,

---

1. The taxing authorities originally collected the tax at the rate of 6% pursuant to the Act of July 1, 1902, 32 Stat. 619, ch. 1352, sec. 6, par. 5, sec. 47–1701, D. C.Code, 1961. However, after Hamilton National Bank v. District of Columbia, 85 U.S.App.D.C. 109, 176 F.2d 624, cert. den. 338 U.S. 891, 70 S.Ct. 241, 94 L.Ed. 547 (1949), national banks with savings accounts paying interest to depositors were taxed at 4% under the Act of April 28, 1904, 33 Stat. 564, ch. 1815, sec. 47–1703, D.C.Code 1961.

and that this in turn excludes the District tax on gross earnings. Respondent parries and counters that repeals by implication are not favored.

■ We have a more realistic guide to interpretation in the legislative history of the 1959 law. The plain meaning of the words is generally the most persuasive evidence of the intent of the legislature. The plain meaning doctrine must be given application, however hard or unexpected the particular effect, where unambiguous language calls for a logical and sensible result. Chung Fook v. White, 264 U.S. 443, 44 S.Ct. 361, 68 L.Ed. 781 (1924). A contrary course constitutes judicial legislation. It is not the function of the courts to upset the balances among interests deliberately arrived at by the legislature, for that choice is a legislative and not a judicial function, in the absence of constitutional considerations. See Learned Hand, Contribution of an Independent Judiciary to Civilization.[2]

■ Yet the plain meaning rule has limitations. It has long been recognized that the literal meaning of a statute will not be followed when it produces absurd results. Sorrells v. United States, 287 U.S. 435, 446, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249 (1932). And since the judicial function is to ascertain the legislative intention the Court may properly exercise that function with recourse to the legislative history, and may depart from the literal meaning of the words when at variance with the intention of the legislature as revealed by legislative history. See United States v. American Trucking Associations, 310 U.S. 534,

542–543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

The 1959 law was passed by the 86th Congress, after the failure of enactment of S. 1451, 85th Congress, which proposed the controversial Financial Institutions Act of 1957. That bill offered in Title I a National Banking Act, described as a "codification of the laws relating to national banks," see S.Rep. 121, 85th Cong. 1st Sess. (1957) p. 2. The bill contained a Section 70, Territorial applicability, the precursor of 12 U.S.C. § 42, as added in 1959. The Senate Report shows that the purpose of this provision was to make clear that the banking act applied in Guam and the Virgin Islands, and in all the Territories including the Commonwealth of Puerto Rico "as well sets forth the purpose of Section 14 as of Columbia." [3]

After the failure of the 1957 proposal Congress turned to a less comprehensive enactment which eventually became Public Law 86–230, section 14 of which became 12 U.S.C. § 42. The House Report (H.R.Rep. No. 694, 86th Cong., 1st Sess. (1959)), under the overall heading "Ambiguities Clarified or Eliminated" sets forth the purpose of Section 14 as follows (pp. 2–3):

"Section 14 sets forth the area in which the national banking laws apply. In conformity with sections 40 and 41 of title 12 of the United States Code it covers the Virgin Islands and Guam. It also covers all other Territories and possessions of the United States, expressly including the Commonwealth of Puerto Rico, as well as the several States

---

2. An address delivered to the Massachusetts Bar Association in 1942, available in the collection of Learned Hand's papers published by Dilliard, *The Spirit of Liberty* (Knopf, 1952), and in *Jurisprudence in Action*, a compilation of legal essays selected by the Association of the Bar of the City of New York (Baker, Voorhis, 1953).

3. S.Rep.No. 121 states at p. 31:
   "Section 70. Territorial applicability of act.
   "This section, dealing with areas in which this act is applicable, includes among those areas the Virgin Islands and Guam as did title 12, United States Code, section 40 and 41. It also makes the act applicable in all other Territories and possessions of the United States, expressly including the Commonwealth of Puerto Rico, as well as the several States and the District of Columbia."

and the District of Columbia. While it has always been assumed that the national banking laws extended throughout the United States and all of its possessions, enactment of this section will eliminate any doubt on this score."

The foregoing makes it reasonably clear that there was no intention that Section 14 would make any substantial changes in the law governing national banks in the District of Columbia. Section 14 was not one of the sections referred to in House debate as being substantive. 105 Cong.Rec. 14,776–77. There is nothing even remotely to suggest that any legislator would suppose that by voting for this bill he was voting to suspend the District of Columbia tax on the gross earnings of national banks.

Appellant suggests that a different clue is to be found on the Senate side, where the Committee report referred to Section 14 as a "new provision." [4] It is certainly a new provision, since no similar provision previously appeared on the statute books. But that is not to say that it changed the previous law.

Appellant turns next to the doctrine that legislation will not be construed so as to constitute a mere nullity. But the fact that Section 14 of the 1959 act wrought no substantive change does not condemn it as a nullity. It was apparently conceived as a tidying up measure to avoid future doubts. That is not a meaningless purpose.

In this regard it is particularly noted that the primary concern of the draftsmen seems to have been to assure coverage in the territories and possessions, and the Commonwealth of Puerto Rico. The 1959 general coverage provisions filled a void which had led to cluttering the national banking laws with a spate of specific territorial coverage provisions.[5] In general, it was often difficult to determine territorial coverage questions in the absence of specific statutory provisions and frequently this involved careful study of hearings, committee reports and debates.[6] The desirability of avoiding future doubts may have been underscored by the evolution of new legal conceptions of areas—for example the Commonwealth of Puerto Rico, and the Trust Territories administered under the surveillance of the United Nations.

██ Finally it should be observed that 12 U.S.C. § 548 is basically not a restrictive but a permissive statute. It permits that "the legislature of each State may determine" to tax national banks, and the so-called restrictions are essentially limitations on the permission. The permission of Congress was consid-

---

4. S.Rep.No. 730, 86th Cong. 1st Sess. p. 4; U.S.Code Cong. and Admin.News, 1959 p. 2235.

5. See e.g., in United States Code (1958 ed.), Title 12, section 40 (1932 law extending National Banking Act to the Virgin Islands); section 41 (1956 law extending National Banking Act to Guam); section 34a-c (providing for consolidation of bank incorporated under the law of a State, with national bank located in the same State, and further providing that "State" means the several States, Territories, Puerto Rico, Virgin Islands and the District of Columbia); section 214 (1950 law providing for conversion of national bank with "a State bank in the same State in which the national banking association is located, under a State charter" and defining "State bank" as one incorporated under the laws of any State or Territory, Puerto Rico or the Virgin Islands, or under the District of Columbia Code).

6. Reference may be made to the experience of the commission appointed pursuant to the Revised Organic Act of the Virgin Islands, passed July 22, 1954. That act converted the Virgin Islands from a possession to an unincorporated territory, established a commission to consider and report to Congress within 12 months its recommendations as to changing the applicability or inapplicability of Federal statutes. See 48 U.S.C. § 1574(d). The report required consideration of numerous threshold questions in determining which statutes were or were not applicable. The commission concluded that a number of statutes were of doubtful applicability, and should be made expressly applicable. See Report of the Commission on the Application of Federal Laws to the Virgin Islands, Committee Print of House Committee on Interior and Insular Affairs, 84th Cong. 2d Sess. (1956).

ered a necessary prerequisite before a State legislature could tax a national bank, in view of McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) invalidating such State taxation of a Federal instrumentality in the absence of Congressional permission. Similarly a territory or possession may not tax the instrumentality of its sovereign without the latter's consent, wherefore R.S. § 5219, later converted into 12 U.S.C. § 548, was necessary to permit territorial legislatures to tax national banks. Domenech v. National City Bank, 294 U.S. 199, 55 S.Ct. 366, 79 L.Ed. 857 (1935). But as the District of Columbia Tax Court noted, the District of Columbia is an agency or integral part of the United States, and there is no need to invoke any consent such as is provided by 12 U.S.C. § 548 in order for Congress, when enacting tax legislation for the District of Columbia, to lay a tax on national banks.

Our construction accords with the cardinal principle disfavoring repeals by implication, and seeking to harmonize simultaneous application of general legislation and District of Columbia legislation.

2. Appellant's second group of contentions have a constitutional aura. The claim is that there is an unconstitutional discrimination if national banks in the District of Columbia are held to be subject to a gross receipts tax laid by Congress (through the District of Columbia Code) since these banks are in competition with national banks in the surrounding areas of Maryland and Virginia where Congress has protected national banks by providing (12 U.S.C. § 548) that only taxes on net income can be imposed. The difference is particularly critical for a young bank like appellant, organized in 1962, which shows losses in its early years. In the alternative it is suggested that the District of Columbia Code be construed to avoid the constitutional doubts generated by such discrimination.

Here again appellant asks us to change our 1946 ruling in the *Hamilton National Bank* decision. However, the point was not urged or considered in 1946, and since a constitutional question is involved we consider the contention.

The argument is met at the outset by the fact that Congress has not required uniform tax treatment of national banks. Its policy, in the context of the Federal system, clearly permits differences in the tax burdens borne by national banks that are virtually side by side and separated only by an invisible state border. Yet there is not even a scintilla of a constitutional claim in such situations.

Appellant's rejoinder is, apparently, to concede that differences are not necessarily unreasonable discriminations, to admit that differences in net income tax burdens may not rise to the level of unconstitutional discrimination, but to argue that there is a critical difference in kind between a net income tax and a gross income tax.

Appellant has a hard row and a dull hoe. To rebut the presumption of constitutionality of tax statutes, or here a pattern of tax statutes, there must at a minimum be a firm factual showing of burdens so onerous on the class subject to discrimination and so lacking in possible foundation as to negative the possibility of reasonable judgment. The record before us does little more than show that there are 7 national banks in the District of Columbia and a number of banks in the adjoining counties of Virginia and Maryland, that about 50% of appellant's business is with depositors and borrowers with residence or business locations in these counties, and that appellant is in active competition with national banks located in those counties. It is too skimpy by far to meet the burden of rebutting the presumption of constitutionality.

The constitutional question cannot turn on appellant's own particular position, but on national banks in the District of Columbia as a class, and there is no effective showing as to the extent

and significance of either the absolute or relative tax burden of that class. The legislative power to select classes and make classifications for heavier tax burdens is broad indeed. See Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327 (1937).

The doctrine that statutes should be construed to avoid constitutional difficulties is not to be invoked on the basis of such sketchy references to possibility of unreasonable discrimination in tax laws. Moreover, in this case that doctrine, whose raison d'etre is precisely the elimination of (constitutional) difficulties, would lead to the creation of (possibly constitutional) difficulties. The construction contended for would give national banks an advantage over District of Columbia banking institutions other than national banks. These are concededly in competition with national banks in the District of Columbia, and might well have to be given the benefit of the same construction, or rather reconstruction, of the District of Columbia tax laws as that sought by appellant in order to avoid discrimination between two sets of directly competitive financial institutions operating in the same locality. See Hamilton National Bank v. District of Columbia, 85 U.S.App.D.C. 109, 176 F.2d 624, cert. denied, 338 U.S. 891, 70 S.Ct. 241, 94 L.Ed. 547 (1949).

And so we end with the comment noted at the beginning. Appellant may well have a problem. The District of Columbia Code lays a gross earnings tax on a limited class of companies: banks; and conventional public utilities, such as the telephone, gas and electric power companies. The conventional utilities do not have the same kind of direct competition, and they are entitled to rates and gross revenues sufficient to cover all elements of cost of utility service, including gross earnings taxes, and in addition a fair net return after taxes. See D. C. Transit System, Inc. v. Washington Metropolitan Area Transit Commission, 121 U.S.App.D.C. ——, 350 F.2d 753, decided April 8, 1965. Appellant may wish to present evidence that national banks in the District of Columbia are in an economic condition that differs markedly from that prevailing on July 1, 1902 (the date of enactment of 47 D.C.Code §§ 1701, 1703), and from that of the conventional utilities; that national banks are in more direct competition with other institutions and hence unable to increase their gross revenues to preserve their net margin in the same way as utilities; that indeed a major purpose of the Comptroller of the Currency in licensing new national banks has derived from the prospect that increased competition will reduce general interest rates to borrowers. Upon further reflection Congress may well agree that national banks in the District of Columbia, like all other national banks, should be protected from tax burdens when operating at a loss. That is a problem for the consideration of Congress rather than this court.

Affirmed.