**AVIATION CONSUMER ACTION PROJECT et al.**

v.

**C. Langhorne WASHBURN et al., Appellants.**

**No. 75–1086.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1976.

Decided April 6, 1976.

Rehearing and Rehearing En Banc Denied May 21, 1976.

Judith S. Feigin, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Irving Jaffe, Acting Asst. Atty. Gen., Earl J. Silbert, U. S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief for appellants.

Morton Hollander, Atty., Dept. of Justice, and Peter R. Reilly, Asst. U. S. Atty., Washington, D. C., also entered appearances for appellants.

Reuben B. Robertson, III, Washington, D. C., with whom Alan B. Morrison, Washington, D. C., was on the brief for appellees.

Before MacKINNON and ROBB, Circuit Judges and BRODERICK,* United States District Judge for the Eastern District of Pennsylvania.

BRODERICK, District Judge:

This is an appeal from an order of the district court dated September 6, 1974 granting summary judgment to the plaintiffs (appellees), which order declared that

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

exemption five of the Freedom of Information Act, 5 U.S.C. § 552(b)(5), "is inapplicable and cannot be invoked by the defendants (appellants) or their agents or employees as a basis for closing any meeting of the Travel Advisory Board (hereinafter TAB) or any other advisory committee from the public, or for excluding the plaintiffs or any other interested person from any such meeting." The district court's order also declared that exemption five of the Freedom of Information Act, "pertaining to inter-agency and intra-agency memorandums and letters, is inapplicable and cannot be invoked by defendants (appellants) or their agents or employees as to documents which have been voluntarily disclosed by the agency to members of an advisory committee who are not full-time officers or employees of the Federal government." The appellants contend that the district court erred in holding that exemption five of the Freedom of Information Act cannot be asserted as a basis for closing an advisory committee meeting under section 10(d) of the Advisory Committee Act, 5 U.S.C. App. I. The appellants further contend that even if the district court did not err in holding exemption five inapplicable to TAB meetings, the order is over-broad in that it applies to meetings of advisory committees in the Department of Commerce other than the TAB.

The appellee, Aviation Consumer Action Project, is a non-profit corporation organized under the laws of the District of Columbia, and is engaged in the advocacy of consumer rights and public interest in the airline and tourism industries. Appellee, Donald P. Knoles, is a reporter assigned to cover news developments affecting the airline and tourism industries, while appellee, Brant S. Goldwyn, is a consumer of air transportation and tourism services.

The appellant, United States Department of Commerce, is a department of the United States government with the responsibility to promote travel in the United States. Appellant, C. Langhorne Washburn, is the Assistant Secretary of Commerce for Tourism. Mr. Washburn, in his official capacity as the Assistant Secretary of Commerce, is the head of the United States Travel Service (USTS). By delegation from the Secretary of Commerce, Mr. Washburn, as the Assistant Secretary for Tourism, is also responsible for the administration of the International Travel Act of 1961, as amended, 22 U.S.C. § 2121 et seq. The purpose of the International Travel Act is to strengthen the domestic and foreign commerce of the United States and promote friendly understanding and appreciation of the United States by encouraging foreign residents to visit the United States.

The Assistant Secretary for Tourism, Mr. Washburn, is also the Chairman of the TAB.[1] TAB was established by the Secretary of Commerce on July 18, 1968 in accordance with the provisions of the Federal Advisory Committee Act, 5 U.S.C. App. I.[2] The charter of the TAB provides that the purpose of the committee is to: (1) Advise the Secretary of Commerce on policies and programs designed to accomplish the pur-

---

1. The Federal Advisory Committee Act provides that:

> There shall be designated an officer or employee of the Federal Government to chair or attend each meeting of each advisory committee. The officer or employee so designated is authorized, whenever he determines it to be in the public interest, to adjourn any such meeting. No advisory committee shall conduct any meeting in the absence of that officer or employee.
>
> Advisory committees shall not hold any meetings except at the call of, or with the advance approval of, a designated officer or employee of the Federal Government, and in the case of advisory committees (other than Presidential advisory committees), with an

agenda approved by such officer or employee. 5 U.S.C. App. I § 10(e) and (f).

2. The Federal Advisory Committee Act, 5 U.S.C. App. I, was enacted on October 6, 1972, and applies to all advisory committees whether in existence at the time of enactment of the Act or established after its enactment. The Act provides that no advisory committee shall meet or take any action until an advisory committee charter has been filed with the head of the agency to whom any advisory committee reports and with the standing committee of the Senate and the House of Representatives having legislative jurisdiction of such agency. The Act also provides that a copy of the charter shall be furnished to the Library of Congress. 5 U.S.C. App. I § 9(c).

pose of the International Travel Act of 1961, as amended; and (2) To identify areas where the attainment of goals of the USTS can be facilitated, and to develop policy recommendations related thereto, and promote the goals of both the travel industry and the agencies connected therewith. The TAB is to function solely as an advisory body.[3] The TAB consists of fifteen members, in addition to the chairman. Its members are appointed by the Secretary of Commerce and serve for a period of two years. The members of the TAB are senior representatives from private and public organizations involved in the travel and tourism industries.

The factual background leading to this lawsuit can be summarized as follows. Chairman Washburn determined that the TAB should conduct a meeting on September 25, 1973 and that one item that should be placed on the agenda for discussion at that meeting was a memorandum dated August 31, 1973, prepared by Michael Miller, Deputy Assistant Secretary for Tourism, which memorandum was sent to Mr. Washburn. This memorandum summarized various proposals and recommendations developed within the USTS relating to future planning of USTS programs, policies and objectives. Chairman Washburn determined that the memorandum was an intra-agency memorandum within the meaning of exemption five of the Freedom of Information Act and that therefore the portion of the TAB meeting concerning the memorandum should be closed to the public. Therefore, pursuant to section 10(d) of the Advisory Committee Act, Mr. Washburn sought a determination by the Assistant Secretary of Commerce for Administration that the meeting concerned matters listed in Section 552(b) of Title 5.[4] On September 6, 1973, the Assistant Secretary for Administration issued a written finding that "public interest requires that such matters be withheld from disclosure" and determined that the portion of the scheduled September 25, 1973 meeting during which intra-agency communications would be reviewed and discussed by the TAB members should be closed to the public pursuant to exemption five of the Freedom of Information Act and in accordance with Section 10(d) of the Federal Advisory Committee Act.[5] On September 19, 1973, a notice of the September 25 TAB meeting was published in the Federal Register, 38 F.R. 26222. The notice stated that following a general open session to

**3.** Charter of Travel Advisory Board, App. 33, 5 U.S.C. App. I §§ 2(b)(6) and 9(b).

**4.** Section 10(d) of the Advisory Committee Act, 5 U.S.C. App. I § 10(d) provides that a meeting may be closed if a written determination is made by the head of the agency to which the advisory committee reports that the meeting concerns matters listed in section 552(b) of Title 5. The Secretary of Commerce had delegated to the Assistant Secretary of Commerce for Administration the duty of making such *determinations under the Act.* (App. 16).

**5.** The Notice of Determination reads as follows: As provided in section 10(d) of the Federal Advisory Committee Act, P.L. 92–463, I have determined that the portion of the Travel Advisory Board meeting to be held September 25, 1973, during which intra-agency communications of the United States Travel Service will be reviewed and discussed, will deal with matters which fall within section 552(b)(5) of Title 5 of the United States Code and the public interest requires such matters to be withheld from disclosure. Premature disclosure of these internal communications, which relate to future plans and programs of the United States Travel Service that are undergoing development and are likely to be revised before they are implemented, could have adverse effects upon both public and private interests. The policy inherent in section 552(b)(5) is to encourage free and candid exchange of ideas and opinions during the process of deliberation and policy and decision making. Such policy applies to the deliberations of the Travel Advisory Board in the same manner it would apply to inter-agency or intra-agency deliberations. Accordingly, I hereby determine, pursuant to section 10(d) of the Federal Advisory Committee Act, P.L. 92–463, that the Executive Session portion of the Travel Advisory Board meeting scheduled for September 25, 1973, during which intra-agency communications of the United States Travel Service will be reviewed and discussed shall be exempt from the provisions of sections 10(a)(1) and 10(a)(3) of that Act relating to public participation and record keeping. All other portions of the meeting shall be open to the public. (App. 43).

review and discuss USTS programs and activities there would be a closed executive session to discuss internal memoranda relating to proposed revisions of future programs, objectives and plans. The notice further stated that the Assistant Secretary of Commerce for Administration had determined that these matters fell within section 552(b)(5) of Title 5 and, accordingly, discussion of these memoranda should be closed pursuant to section 10(d) of the Federal Advisory Committee Act. (App. 38).

By letter of September 20, 1973, counsel for appellees requested copies of all memoranda to be discussed at the September 25, 1973 meeting and requested that the determination to close a portion of the meeting be withdrawn. (App. 40). These requests were denied by a hand-delivered letter on September 21. The September 25th meeting was held as scheduled, with the executive session being closed to the public. (App. 41–42). On January 25, 1974, Mr. Washburn mailed to appellees' counsel two copies of the August 31, 1973 memorandum which had been discussed at the executive session of the September 25th meeting.

This suit seeking declaratory and injunctive relief was filed in the district court on September 27, 1973. On September 10, 1974, the district court granted summary judgment for the plaintiffs by an order which declared that exemption five of the Freedom of Information Act "is inapplicable and cannot be invoked by the defendants or their agents or employees as a basis for closing any meeting of the Travel Advisory Board or any other advisory committee from the public, or for excluding the plaintiffs or any other interested person from any such meeting." The district court's order also declared that exemption five of the Freedom of Information Act "pertaining to inter-agency and intra-agency memorandums and letters is inapplicable and cannot be invoked by defendants or their agents or employees as to documents which have been voluntarily disclosed by the agency to members of an advisory committee who are not full-time officers or employees of the Federal government."

I.

Section 10 of the Federal Advisory Committee Act, 5 U.S.C. App. I, provides in pertinent part:

(a)(1) Each advisory committee meeting shall be open to the public.

(2) Except when the President determines otherwise for reasons of national security, timely notice of each such meeting shall be published in the Federal Register . . . .

(3) Interested persons shall be permitted to attend, appear before, or file statements with any advisory committee, subject to such reasonable rules or regulations as the Director may prescribe.

\* \* \* \* \* \*

(d) Subsections (a)(1) and (a)(3) of this section shall not apply to any advisory committee meeting which the President, or the head of the agency to which the the advisory committee reports, determines is concerned with matters listed in section 552(b) of Title 5. Any such determination shall be in writing and shall contain the reasons for such determination. If such a determination is made, the advisory committee shall issue a report at least annually setting forth a summary of its activities and such related matters as would be informative to the public consistent with the policy of section 552(b) of Title 5.

Subdivision (d) quoted above provides that the open meeting requirement for advisory committee meetings shall not apply to any advisory committee meeting which the President or the head of the agency determines is concerned with matters listed in section 552(b) of Title 5. The Freedom of Information Act provides that certain matters are *not* available to public information. Section 552(b) of Title 5 specifically provides that the Freedom of Information Act does not apply to matters that are:

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells.

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

Subsection 5 quoted above clearly makes unavailable inter-agency or intra-agency memorandums.

■ A plain reading of the above quoted statutes establishes that the provisions of the Federal Advisory Committee Act which require open public meetings do not apply to any advisory committee meeting which the head of an agency determines is concerned with inter-agency or intra-agency memorandums. The appellees contend that exemption five relating to inter-agency and intra-agency memorandums does not apply to advisory committee meetings. Appellees argue that if exemption five is available to justify closing advisory committee meetings whenever the discussion concerns an inter-agency or intra-agency memorandum, the mandate of the statute that advisory committee meetings be open to the public would be swallowed up by the exception created by exemption five, since the sole function of an advisory committee is to render advice and make recommendations concerning inter-agency and intra-agency memorandums. The Court does not agree that such is the sole function of an advisory committee.

■ When a statute is clear and unequivocal on its face, as are the sections of the Acts now before the Court, it has been said that there is no necessity to resort to the legislative history of the Act but that the decision as to its meaning may rest on the words of the statute itself. *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575, 579 (1961); *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 492, 67 S.Ct. 789, 793, 91 L.Ed. 1040, 1050 (1947); *Calvert Cliffs' Coordinating Comm. v. United States AEC*, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1126 (1971); *Shackleford v. United States*, 127 U.S.App.D.C. 285, 383 F.2d 212, 215 (1967). However, the plain meaning doctrine has always been considered subservient to a truly discernible legislative purpose. *Wilderness Society v. Morton*, 156 U.S.App.D.C. 121, 479 F.2d 842, 855 (en banc), cert. denied 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973). The use of the legislative history to determine Congressional purpose is appropriate where the words of the statute are ambiguous or the literal words of the statute would bring about an end completely at variance with

the purpose of the Act. *United States v. Public Utilities Commission of California,* 345 U.S. 295, 315, 73 S.Ct. 706, 717, 97 L.Ed. 1020, 1037 (1953); *District of Columbia National Bank v. District of Columbia,* 121 U.S.App.D.C. 196, 348 F.2d 808, 810 (1965).

■ Nothing in the wording of the Federal Advisory Committee Act lends support to the appellees' contention that exemption five of the Freedom of Information Act is inapplicable to Advisory Committee meetings. Furthermore, an examination of the legislative history of the Federal Advisory Committee Act clearly indicates that although the standard of openness and public inspection was to be applied liberally, it was the intention of Congress to provide for closed deliberations under certain conditions.[6]

■ Appellees also contend that if exemption five does apply to the Federal Advisory Committee Act, once a memorandum is disclosed to a member of an advisory committee, that memorandum can no longer be considered an inter-agency or intra-agency memorandum. Appellees argue that members of an advisory committee are members of the public and disclosure to an advisory committee member of such a memorandum makes the memorandum public. This reasoning would completely negate exemption five as applicable to advisory committee meetings. Such a conclusion flies directly in the face of Congressional intent as clearly set forth in the words of the Act. Furthermore, a prior decision of this Court held that reports prepared by an advisory committee, which reports were submitted to the agency, were intra-agency memorandums subject to exemption five of the Freedom of Information Act. *Washington Research Projects, Inc. v. HEW,* 164 U.S.App. D.C. 169, 504 F.2d 238 (1974), *cert. denied* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). Here, we are concerned with a memorandum prepared by the agency and shown to the advisory committee. *A fortiori,* an intra-agency memorandum supplied by the agency to an advisory committee, is subject to exemption five of the Freedom of Information Act.[7] The policy behind exemption five is particularly applicable to advisory committees, whose sole function is to advise the agency. The exemption is designed to encourage a free and candid exchange of ideas during the process of

6. The following discussion by Senator Percy in explanation of the conference committee's bill summarizes the application of the exceptions found in the Freedom of Information Act to the Federal Advisory Committee Act.

I believe this conference report represents a fair balance between the House and Senate bills. The major area of compromise is Section 10, setting forth requirements for opening up advisory committees to the public and extending public access to their documents. The Senate bill provided guarantees that if meetings were closed because they dealt with matters of national security, business confidentiality, or other matters provided for in the exemptions section of the Freedom of Information Act—section 552(b) of Title V of the U.S. Code, transcripts must be taken. The House bill did not contain such provisions. The conference report accepts the principle that advisory committee meetings should be open, and that documents associated with advisory committees should be available to the public on request. Under the conference version, however, meetings can be closed to the public, and documents can be withheld under the exemptions in the Freedom of Information Act. In cases where meetings are closed, the President or agency head who closes them must say why. Another requirement is that detailed minutes be kept of each meeting, but these are not available to the public in cases where meetings are required to be closed. 118 Cong.Rec. 31225.

Senator Muskie and Representative Monagan similarly summarized the conference committee's bill to their respective bodies by stating that public access to advisory committee meetings was subject to the restrictions set forth in 5 U.S.C. § 552(b). Neither made any qualification in connection with exemption five. 118 Cong.Rec. 31225, 118 Cong.Rec. 31421.

7. This Court's decision in *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971), is to the same effect. In *Soucie,* the Court held that the report of a panel of outside experts evaluating the SST program for the office of Science and Technology was an intra-agency memorandum entitled to protection under exemption five. In *Wu v. National Endowment for Humanities,* 460 F.2d 1030 (5th Cir. 1972), the Court held that the report of unpaid outside consultants was an intra-agency report which could be withheld pursuant to exemption five of the Freedom of Information Act.

decision-making and to prevent predecisional disclosure of incipient policy or decisions that could disrupt agency procedures. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971); *Ackerly v. Ley*, 137 U.S.App.D.C. 133, 420 F.2d 1336, 1341 (1969). We therefore decline to hold that the mere disclosure of an intra-agency memorandum to an advisory committee makes the memorandum public information to which exemption five is inapplicable.

■ Appellees voice concern that exemption five will be abused so that all advisory committee meetings will be closed to the public. The record reveals that there have been more than twenty meetings of the TAB and only on three occasions have portions of the meetings been closed to the public.[8] There is nothing in this record which indicates that there has been an abuse of exemption five, 5 U.S.C. § 522(b)(5).

## II.

The appellants further contend that the district court's order is overbroad in that certain provisions of the relief granted to the appellees apply to all advisory committees within the Commerce Department rather than being limited to the TAB.[9] Appellants are particularly concerned with paragraph five of the district court's order which states that "except for emergency meetings, the requirement of Section 10(a)(2) of the Federal Advisory Committee Act, that timely advance public notice be

given by defendants of each meeting of the TAB or any of their other advisory committees, is not met by any notice not published at least thirty (30) days in advance of the meeting."[10] Appellants point out that some advisory committees within the Department of Commerce meet on a monthly basis, and that the date of the next monthly meeting is set by the committee at its current meeting, which date is often less than thirty days away. They contend that in such situations the thirty day notice requirement presents an unnecessary procedural obstacle to some advisory committees. The Federal Advisory Committee Act (5 U.S.C. App. I § 10(a)(2)) provides that:

> Except when the President determines otherwise for reasons of national security, timely notice of each such meeting shall be published in the Federal Register, and the Director shall prescribe regulations to provide for other types of public notice to insure that all interested persons are notified of such meeting prior thereto.

The Act does not mandate that "timely notice" shall be thirty days. The OMB guidelines published in the Federal Register interpreted "timely notice" to require publication at least fifteen days prior to the meeting. 39 Fed.Reg. 12390.

■ Injunctive relief granted to a party in a lawsuit must be framed to remedy the harm claimed by the party. *Hartford-Empire Co. v. United States*, 323 U.S. 386, 410, 65 S.Ct. 373, 385, 89 L.Ed. 322, 360 (1945). An injunction must be narrowly tailored to remedy the specific harm shown. *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974); *Consolidated Coal Co. v. Disabled Miners of West Virginia*, 442 F.2d 1261, 1267 (4th Cir.), *cert. denied* 404 U.S.

**8.** Affidavit of C. Langhorne Washburn, § 8, App. 18.

**9.** As the appellants' brief (p. 19, 25) points out, there are 75 advisory committees (including TAB) within the Department of Commerce.

**10.** Appellants do not contend that the TAB cannot comply with the thirty day notice requirement. Indeed, in his affidavit Mr. Washburn states that:

In order to assure the maximum public accessability to the operations of the TAB, I made the following commitments on behalf of the United States Travel Service and the TAB:

\*   \*   \*   \*   \*   \*

Except for emergency meetings, notice of the time and place of TAB meetings will be published in the Federal Register at least 30 days in advance of each meeting . . . . Affidavit of C. Langhorne Washburn, § 10 (App. 19).

911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971). The pleadings in this case, including the appellees' prayers for relief, were limited to the TAB and do not refer to any other advisory committees within the Department of Commerce. An examination of the record shows that all evidence submitted to the district court was limited to the TAB. There was, therefore, no evidence in the record before the district court which could serve as a basis for injunctive relief concerning any advisory committee in the Department of Commerce other than the TAB. We are therefore of the opinion that the district court's order is overbroad insofar as it applies to advisory committees other than the TAB.

### III.

The district court's order is reversed insofar as it declares exemption five of the Freedom of Information Act inapplicable to documents voluntarily disclosed to members of an advisory committee and enjoins advisory committees from closing any meeting on the basis of exemption five of the Freedom of Information Act. We also reverse the district court's order insofar as it applies to advisory committees of the Department of Commerce other than the TAB.

*Judgment accordingly.*

### On Appellees' Suggestion for Rehearing En Banc

Before BAZELON, Chief Judge; and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

### ORDER

PER CURIAM.

Appellees' suggestion for rehearing *en banc* having been transmitted to the full Court and no Judge having requested a vote thereon, it is

ORDERED by the Court *en banc* that appellees' aforesaid suggestion for rehearing *en banc* is denied.

Statement of BAZELON, Chief Judge, in which Circuit Judge J. SKELLY WRIGHT concurs, explaining why he voted to deny rehearing en banc:

Given the broadest possible interpretation, Exemption 5 relating to "inter-agency or intra-agency memorandums" could, as appellees predict, gut the open meeting provisions of the Federal Advisory Committee Act.[1] The rubric of "inter-agency or intra-agency memorandums" can conceivably be stretched to include all communications between agency and advisory committee concerning policy advice. Premising their argument on such an expansive reading, appellees argued that Exemption 5 was "inherently inconsistent" with the legislative policy behind the Act and demanded that it be judicially excised. That the panel refused to read Exemption 5 out of the statute entirely does not so misstate applicable law as to merit rehearing en banc. *Cf. FAA Administrator v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975).

On the other hand, preserving the open meeting requirements of the Federal Advisory Committee Act is indisputably a matter of "exceptional importance." F.R.A.P. 35(a)(2). The Act is a vital first step toward opening up to public scrutiny and participation levels of agency decisionmaking where public policy begins to take shape. That promotes peer review by other experts steeped in the subject-matter as well as oversight by the public. *See Ethyl Corp. v. EPA,* No. 73–2205 (March 19, 1976) (Bazelon, C. J., concurring).

The parties here did not urge, and the court did not consider, a narrowing construction of Exemption 5 in the context of the Advisory Committee Act.[2] The panel

---

1. 5 U.S.C. App. I, § 10(a) (Supp. III, 1973). Section 10(d) exempts from the open meeting provisions those meetings "concerned with matters" exempt from disclosure under the Freedom of Information Act. *See* 5 U.S.C. § 552(b)(5) (1970) ("inter-agency or intra-agency memorandums").

2. For the suggestion that limiting constructions of Exemption 5 are possible, *see* Perritt & Wilkinson, *Open Advisory Committees and the Po-*

opinion does not, for example, foreclose the possibility that a specific, pre-existing document qualifying as an "inter-agency or intra-agency memorandum" before it is passed to the advisory committee may be necessary to trigger the exemption. *See Nader v. Dunlop,* 370 F.Supp. 177, 180 (D.D.C. 1973).[3] Nor does it decide whether a committee discussion of the same subject matter as that covered in an exempt memorandum, which discussion does not—or need not—involve the specific contents of the memorandum, is "concerned with matters" exempt under § 10(d). Finally it is not decided whether "reasonably segregable" portions of meetings concerned with non-exempt matters must remain public. *Nader v. Dunlop, supra,* 370 F.Supp. at 179.

As I read it, the panel merely decided that Exemption 5 must be given some effect in the context of the Federal Advisory Committee Act—leaving open the exact confines of the exemption. I therefore vote to deny rehearing en banc.

*litical Process: The Federal Advisory Committee Act After Two Years,* 63 Geo.L.J. 725, 744–745 (1975). *But see,* Tuerkheimer, *Veto by Neglect: The Federal Advisory Committee Act,* 25 Am.L.Rev. 53, 66 n.70 (1975).

Appellees frankly eschewed that approach: "There are, in our view, only two possible interpretations to the relation between Exemption 5 and the Advisory Committee Act's provisions for open meetings. Either no meeting can be closed on the basis of Exemption 5, or every meeting can be closed: there are no interim positions." Appellee's brief, 19.

**3.** By rejecting the claim that "mere disclosure of an intra-agency memorandum to an advisory committee makes the memorandum public information," at —— of —— U.S.App.D.C., at 108 of 535 F.2d, the panel did not necessarily adopt

the converse: that an otherwise nonexempt memorandum becomes exempt either as an "intra-agency" or an "inter-agency" memorandum by virtue of being sent to an advisory committee.

Given the peculiar hybrid status of advisory committees under the Act, and the definitions distinguishing them from agencies, *compare* 5 U.S.C. App. I, § 3(2) *with id.,* § 3(3), it is entirely possible that memorandums sent to them should be construed as falling into neither the "intra-agency" nor the "inter-agency" category.

Appellees did not rely on the fact that the memorandum here was manufactured specifically for the purpose of closing the meeting. Appellee's Petition for Rehearing and Suggestion for Rehearing En Banc, 5 n.3.