**Marvin L. HOLT, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 85–1185.

District of Columbia Court of Appeals.

Submitted Jan. 15, 1987.

Decided Aug. 31, 1988.

Alan B. Soschin, Washington, D.C., appointed by this court, was on the brief, for appellant.

Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Judith Hetherton, John E. Stevens, and Robertson T. Park, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and MACK and BELSON, Associate Judges.

**PER CURIAM:**

Appellant Holt was charged in a two count indictment with armed robbery (D.C. Code §§ 22–2901, –3202 (1981)), and felony threats (D.C.Code § 22–2307 (1981)). After a jury trial, he was acquitted of armed robbery (and the lesser-included offense of assault with a dangerous weapon) but convicted of felony threats. He was sentenced pursuant to the Federal Youth Corrections Act (18 U.S.C. § 5010(b) (repealed 1984), to a term of imprisonment for up to six years. In this court he challenges his conviction for felony threats on the ground that an essential element of the offense, specific intent to extort, was not proven at trial. The government contends that under *United States v. Young*, 376 A.2d 809 (D.C. 1977), the statute—which carries a maximum twenty-year prison sentence—may be applied to anyone who threatens another with bodily injury, regardless of the existence of intent to extort. Appellant contends that this reading of the statute is in contravention to what has been called "compelling" legislative history.[1] Further, it is also argued that such a reading not only produces absurd results but renders the statute unconstitutional as applied.[2]

Two discrete incidents formed the basis for the crimes charged in the indictment. The first incident occurred when the complainant was grabbed from behind by a man as she was locking her door to leave for work in the morning. A gun was placed to her head, and her assailant tried to take her pocketbook. After a brief scuffle the man ran away, dropping the pocketbook. These facts were developed as proof of the armed robbery and assault charges of which appellant was acquitted.

The second incident occurred later the same day. Complainant was retrieving some items from her car when she saw a man, who physically resembled her morning assailant, walking towards her. Without stopping, the man walked past her and said "I'm gonna get you, bitch." These

---

1. *See United States v. Young, supra,* 376 A.2d at 815 (Mack, J., dissenting).

2. Appellant also contends that two remarks made by government witnesses during trial

should have resulted in a mistrial. We find the trial court did not abuse its discretion in refusing to declare a mistrial, especially in light of the cautionary instructions given to the jury.

facts form the basis for appellant's conviction under § 22–2307—a conviction which appellant now challenges on the ground that the government failed to prove specific intent to extort.

The government responds by merely citing *United States v. Young, supra,* noting that the decision precludes consideration of the question of whether D.C.Code § 22–2307 only proscribes threats made with specific intent to extort. In that case, this court held that the "plain language" of § 22–2307 [3] contained no such limitation and concluded therefore that the court could not consider legislative history and other indications of legislative intent to the contrary in interpreting the provision.

At the outset, we note that in *Young,* the question of whether § 22–2307 requires specific intent to extort was presented in a different context from that of the instant case. The issue in *Young* was whether the trial court had properly dismissed an indictment on insufficiency grounds. The defendant in *Young* claimed the indictment was ambiguous and insufficiently detailed, as it contained neither the actual words of the alleged threat nor charged that the threats were made knowingly and intentionally. He also pointed to the existence of a second statute (D.C.Code § 22–507) prohibiting supposedly identical conduct but providing vastly disparate punishment, arguing that this rendered the statute under which he was charged ambiguous. The trial court agreed, and after consideration of the legislative history and other indications that the statute was intended to prohibit threats to extort, dismissed the indictment. This court reversed, basing its holding on the "plain language" of § 22–2307.

In contrast, no question as to the sufficiency of the indictment is presented in the instant case. Instead, the question is whether § 22–2307, with its provision for up to twenty years in prison and a fine of up to five thousand dollars, was intended to punish the kind of threatening conduct that occurred here. Context, notwithstanding however, we are constrained by our holding in *Young* to affirm both conviction and sentencing. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) (only en banc court may overrule a prior decision).

SO ORDERED.

MACK, Associate Judge, concurring:

The facts of the instant case say more eloquently than any argument I could ever make why *United States v. Young,* 376 A.2d 809 (D.C.1977) is wrong. An accused who says, "I'm gonna get you, bitch" may face, at the discretion of the prosecutor, a maximum penalty of twenty years imprisonment, while another who says the same thing may face six months incarceration. *See* D.C.Code § 22–507 (1981).[1] At the risk of being a bore, however, I write separately to say why this court should take another look at *Young.*

Viewed in isolation, the "plain language" of § 22–2307 may, as the majority in *Young* concludes, support the view that the statute was not intended only to prohibit threats to extort. But this court has never before sanctioned reliance solely on "plain language" in the presence of compelling evidence of legislative intent to the contrary. " *The literal wording of the statute is a primary index but not the sole index to legislative intent. It cannot pre-*

---

**3.** Section 22–2307 provides:

Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically damage the property of any person or of another person, in whole or in part, shall be fined not more than $5,000 or imprisoned not more than 20 years, or both.

**1.** D.C.Code § 22–507 provides:

Whoever is convicted in the District of threats to do bodily harm shall be fined not more than $500 or imprisoned not more than 6 months, or both, and, in addition thereto or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding 1 year.

I note that in *United States v. Baish,* 460 A.2d 38 (D.C.1983), a prosecution was brought under § 22–507 where the complaining witness had received more than forty telephone threats including threats to kill and threats to use a bomb. The government cites *Baish* for authority that *Young* is good law, but also cites *Baish* for the purpose of defining the elements of the misdemeanor—in this instance the definition of the word "threat" for jurisdictional purposes.

*vail over strong contrary indications in the legislative history* or so as to command an absurd result.' " *Citizens Association of Georgetown v. Zoning Commission of the District of Columbia*, 392 A.2d 1027, 1033 (D.C.1978) (en banc) (quoting *Lange v. United States*, 143 U.S.App.D.C. 305, 307–08, 443 F.2d 720, 722–23 (1971) (footnotes omitted; emphasis added)). *See also Varela v. Hi–Lo Powered Stirrups, Inc.*, 424 A.2d 61, 65 (D.C.1980) (quoting *District of Columbia National Bank v. District of Columbia*, 121 U.S.App.D.C. 196, 198, 348 F.2d 808, 810 (1965) (citations omitted) (" '[S]ince the judicial function is to ascertain the legislative intention the Court may properly exercise that function with recourse to the legislative history, and may depart from the literal meaning of the words when at variance with the intention of the legislature as revealed by legislative history.' ")); *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983) (en banc) (A legislative provision warrants closer scrutiny when its language has only superficial clarity, fails to embody legislative intent, or yields absurd or unjust results.) [2]

The legislative history of § 22–2307 makes it abundantly clear that the statute was meant to proscribe threats to extort. As the dissent in *Young* explains, §§ 22–2306 and –2307 of the D.C.Code were enacted into law as Title X of the Omnibus Crime Control and Safe Streets Act of 1968 by way of an amendment introduced by Senator Tydings, then Chairman of the Senate District of Columbia Committee's Subcommittee on Business and Commerce. The wording of §§ 22–2306 and –2307 is identical to that of the amendment which was introduced by Senator Tydings with the following explanation:

MR. TYDINGS. Mr. President, it is essential for the Senate—while it considers a national crime bill—to correct what appears to be a grave and damaging situation right here in Washington which threatens the commercial life of the city.

Every day reports come in, not only to me, but to my colleague from Maryland and the senators from Virginia, of Washington merchants, and Marylanders and Virginians who own stores in the District of Columbia, who are being threatened and abused by *extortionists* and thieves. Every day, thugs walk into stores and demand or just take merchandise. And if the owner tries to stop them, they threaten to burn down his store. We hear of threats to merchants that if they attempt to rebuild stores burned out in the recent riots, they will be destroyed again. We hear reports of shakedowns and the protection racket here in the District of Columbia.

My amendment, which is similar to the one introduced in the House of Representatives by Mr. WHITENER and Mr. McMILLAN, would make extortion and transmission of threats to persons and property a felony punishable by $5,000 or 20 year's imprisonment, or both.

There is no general prohibition of *extortion* in the District of Columbia Code today. The only Code provision dealing specifically with extortion is a 1902 law, Section 22–1302 of the District of Columbia Code, dealing with false recordation of land records with intent to defraud. Section 22–2305, concerning blackmail, includes only threats to publish disgraceful accusations for the purpose of extorting funds or influencing conduct. Not covered are threats of injury to person or damage to property.

The amendment would create a new title V, making the present reversability provision title VI.

---

**2.** *See also* SUTHERLAND ON STATUTORY CONSTRUCTION, § 46.07 at 110 (4th ed. 1984) ("[I]t is clear that if the literal import of the text of an act is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results, the words of the statute will be modified to agree with the intention of the legislature.... The intention prevails over the letter, and the letter must if possible be read to conform to the spirit of the act. While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words." (footnotes omitted)).

*The extortion title has two sections.* The first section 1001 [§ 22–2306] prohibits *extortion* for money or other things of value. The second section, 1002 [§ 22–2307], prohibit *threats designed to influence conduct,* such as threats to burn out a merchant if he attempts to locate his business in a certain area. These threats must be convincing threats, clearly believable and intended to be acted upon, against particular persons. Generalized or vague threats are not enough.

Specifically, section 1001 prohibits three kinds of action, when they are perpetrated "with intent to extort from any person, firm, association or corporation, any money or thing of value": First, any demand for ransom for a kidnapped person; second, any threat to kidnap or any threat to injure any person; and third, any threat to injure the property or reputation of any person.

*Section 1002* [§ 22–2307] prohibits extortion intended to affect conduct, rather than to extract money. It prohibits threats to kidnap or injure any person or damage his property, regardless of the reason for the threat.

All offenses would be punishable by up to $5,000 fine and 20 years' imprisonment.

As chairman of the Senate District Committee's Subcommittee on Business and Commerce, I recently held hearings on the riot damage and the District's rebuilding plans. I know the importance of this bill. Whether these reports of extortion are true is not the point. The fact is there is no general law on extortion in the District of Columbia at all now. We should enact such a law in any case. But it is particularly urgent now to give citizens and businesses in the District of Columbia the kind of assurance they need that the law will protect them against *extortion.*

114 Cong.Rec. 14,778 (1968) (emphasis added).

In addition to this highly persuasive evidence that § 22–2307 was intended to deal with threats to extort, there are two additional factors which buttress this conclusion. First, as the dissent in *Young* points out there already exists a statute proscribing "simple" threats. Second, the fact that the two Code sections §§ 22–2306 and –2307 carry identical penalties is a strong indication that § 22–2307, like § 22–2306, was intended to combat extortion. *Young, supra,* 376 A.2d at 816.[3]

It should be noted further that this is not the first time that the majority's holding in *Young* has been called into question. In *Ball v. United States,* 429 A.2d 1353, 1359 (D.C.1981), this court explicitly stated that § 22–2307 "was enacted to protect the private citizens and businesses of the District of Columbia against extortion" (footnote omitted). The court quotes the legislative history quoted *infra,* stating "[e]ven though we have said that § 22–2307 does not require proof of specific intent to extort, *United States v. Young,* [*supra*], the express legislative concern to prohibit extortion and like conduct ... cannot be ignored." *Ball v. United States, supra,* 429 A.2d at 1359–60 (footnote omitted).

This court's interpretation in *Young* of § 22–2307 also produces absurd results. Under *Young* threats to injure are punished far more severely than actual infliction of injury. For example, while assaulting with intent to kill, rape, or rob can result in a sentence of not more than fifteen years, merely threatening to commit those acts carries a potential twenty-year prison term. *See* D.C.Code § 22–501 (1981). Similarly, the twenty-year potential sentence for making threats should be compared with the ten-year potential sentence for arson (D.C.Code § 22–401 (1981)); the ten-year potential sentence for destruction of property worth more than $200 (D.C. Code § 22–403 (1981); and the ten-year potential sentence for mayhem or malicious disfigurement (D.C.Code § 22–506 (1981)). *See Young, supra,* 376 A.2d at 816 nn. 7 &

---

**3.** Certainly the codifiers of our Code, who placed these provisions in the chapter "Libel–

8 (Mack, J., dissenting).[4]

" '[T]he literal meaning of [the] statute will not be followed when it produces absurd results.' " *Varela v. Hi–Lo Powered Stirrups, Inc., supra,* 424 A.2d at 65 (quoting *District of Columbia National Bank v. District of Columbia, supra,* 121 U.S. App.D.C. at 198, 348 F.2d at 810). The absurdity of results generated by reading § 22–2307 to prohibit threats other than threats to extort strongly militates in favor of going beyond the "plain language" of § 22–2307 to consider the highly persuasive legislative history of the statute.

Interpreting the statute to encompass the threatening conduct at issue in the instant case not only produces absurd results, but such a reading may render the statute unconstitutional as applied. The fact that there exists a statute supposedly prohibiting identical conduct but providing a far more lenient penalty (namely, only six-months incarceration and a $500 fine, *see* D.C.Code § 22–507, *see supra* note 1) creates due process and equal protection

problems. The statute may also be rendered unconstitutional as applied under the Eighth Amendment's prohibition against cruel and unusual punishment.[5]

Under the Supreme Court's decision in *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983), the final clause of the Eighth Amendment "prohibits not only barbaric punishments, but also [prison] sentences that are disproportionate to the crime committed." The Court has applied this principle to invalidate a ninety-day sentence for the crime of being "addicted to the use of narcotics" even though this punishment is neither cruel nor unusual in the abstract. *Robinson v. California,* 370 U.S. 660, 667, 82 S.Ct. 1417, 1421, 8 L.Ed.2d 758 (1962). The Court reasoned that "the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Id.*[6] The principle of proportionality—that is, that the punishment should fit the crime—is one of the most basic tenets

---

**4.** Courts have pointed out in the past that it would be ludicrous to punish a person more severely for an inchoate offense than if the offense had been completed. For example, in *United States v. Pearson,* 202 A.2d 392 (D.C. 1964), the court found itself faced with the situation where a defendant was subject to a greater penalty for attempted petit larceny than for the completed act of petit larceny. The court resolved the issue by ruling that after reading the two sections together, it followed that the maximum penalty for the attempted petit larceny could not be greater than the maximum penalty that could be given for the completed offense of petit larceny.

The court in *Pearson* cited an early case for the proposition that

"If an unexecuted attempt to steal could be punished with heavier penalties than larceny itself, such a construction cannot be just as it would impute to the legislature an intention inconsistent with all reasons and justice, and contrary to the spirit and views of all their Acts, whose declared objects are to proportion punishment to the crime and to render all punishments moderate but certain, without regard to the quality of the person."

\* \* \* \* \* \*

"It never could be the intention of the legislature to punish with greater severity an abor-

tive attempt than a successful issue or leave it in the power of the court to do so."
*Id.* at 393 (quoting *Rogers v. Commonwealth,* 5 Serg. and R. 463 (Pa.1819)). *See also Buzzard v. Commonwealth,* 134 Va. 641, 114 S.E. 664 (1922), in which the court ruled that a man could not be punished more severely for attempted rape than for completed rape.

**5.** The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

**6.** In the case of *Solem v. Helm, supra,* the defendant was convicted of passing a bad check for $100, and, on the basis of six prior convictions for similar and alcohol-related offenses, was sentenced under a recidivist statute to life imprisonment without possibility of parole. In finding this sentence to be significantly disproportionate, the Court relied upon the nonviolent nature of the crime, the small amount of the check, the fact that more serious crimes were treated less severely in South Dakota, and the fact that only one other state even authorized a penalty of this magnitude for similar crimes and recidivism. The Court distinguished the case of *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), which had upheld a life sentence on comparable facts, on the ground that the *Rummel* sentence included the possibility of parole.

Blackmail–Extortion," read them as I do.

of our system of jurisprudence.[7] The sentence given appellee in the instant case is out of all proportion to the offense committed.[8] Receiving a six-year prison term for uttering the words which threaten some form of bodily harm, without more, offends our basic sense of what is just and fair; such a severe punishment for the relatively minor offense at issue here shocks the conscience and may well constitute a violation of the Eighth Amendment.[9]

It is a canon of statutory interpretation that "the fact that one among alternative constructions would involve serious constitutional difficulties is reason to reject that interpretation in favor of another." SUTH-ERLAND ON STATUTORY CONSTRUCTION, "Constitutional Considerations," § 45.11 at 46 (4th ed. 1984). Applying § 22–2307 to the kind of conduct engaged in by appellant generates serious constitutional problems. When these constitutional infirmities are combined with legislative history that could not be more clear in indicating that § 22–2307 was intended to prohibit threats of extortion, it is simply untenable to reach the result mandated by *Young*. Yet given the explicit holding of *Young* this division is bound thereby. I suggest that appellant may wish to file a petition for rehearing en banc so that the holding of *Young* may be

exposed to reconsideration in the context of the instant case.

---

7. *See* discussion of proportionality in "Penal Philosophy: A Return to 'Just Deserts,'" by Professor Marvin E. Wolfgang, the Key Reporter, Vol. 52 No. 1, at 1–2 (published by United Chapters of Phi Beta Kappa).

8. *Compare Nelson v. United States,* 479 A.2d 340 (D.C.1984), where appellant pled guilty to three offenses (petit larceny, possession of heroin, and attempted petit larceny) and was sentenced to consecutive terms of imprisonment of three years, two years, and one year. Execution of the sentence was suspended and appellant was placed on probation for three years. Subsequent to sentencing, appellant was convicted of unlawful entry, and the court revoked appellant's probation. Appellant argued on appeal that the imposition of the original punishment constituted cruel and unusual punishment. The court disagreed, citing the fact that appellant had committed three separate offenses and had a lengthy criminal record.

9. The Court in *Solem v. Helm, supra,* 463 U.S. at 290–92, 103 S.Ct. at 3009–11, used an analytical framework containing three broad criteria in deciding whether punishment was cruel and

unusual. First, it made a judgment as to the gravity of the offense and the relative harshness of the penalty. Comparisons were drawn in light of the harm caused or threatened to the victim or to society and the culpability of the offender. *Id.* at 292–94, 103 S.Ct. at 3010–12. Second, the Court examined sentences imposed on other criminals in the same jurisdiction and determined whether more serious crimes were subject to the same or lesser penalties. Finally, the Court considered the sentence imposed for commission of the same crimes in other jurisdictions.

I do not undertake here to apply this three-pronged analysis to the facts in the instant case. Rather, I suggest that serious constitutional difficulties of equal protection, due process, and cruel and unusual punishment are generated by application of the court's interpretation of § 22–2307 in *Young* to the case before us. While these constitutional problems are further reason to interpret § 22–2307 in line with clear legislative history indicating the section was intended to prohibit threats to extort, I leave consideration of the constitutional issues for the en banc court should a petition for rehearing en banc be filed and granted.