William R. DYER, et al., Petitioners,

v.

D.C. DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, Respondent.

No. 81–1014.

District of Columbia Court of Appeals.

Argued Jan. 26, 1982.

Decided Nov. 17, 1982.

---

Richard G. Wise, Washington, D.C., for petitioners.

William J. Earl, Asst. Corp. Counsel, with whom Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., was on brief, for respondent.

Before KERN, NEBEKER and MACK, Associate Judges.

KERN, Associate Judge:

On September 10, 1980, the Rental Housing Conversion and Sale Act of 1980, D.C.Law 3–86, (hereinafter "the Act") went into effect.[1] The stated purpose of the Act was:

> To discourage the displacement of tenants through conversion or sale of rental property, and to strengthen the bargaining position of tenants toward that end without unduly interfering with the rights of property owners. [D.C.Code 1981, § 45–1602.]

Petitioners sought from respondent an exemption from the provisions of the Act in order to sell as condominium units their property which tenants occupied on the date the Act went into effect, viz., September, 1980.[2] Petitioners point to one sentence contained in Section 210 of the Act: "The provisions of this title [Act] shall not apply to the conversion of housing accommodations into condominium or cooperative status *which were vacant on January 1, 1980.*" D.C.Code 1981, § 45–1618 (emphasis added). They assert, without contradiction by respondent, that the units on their property were vacant on the date of January 1 and they argue from this fact that under the specific language of Section 210, quoted above, their tenants were not entitled to the Act's protection.

The position of respondent is that the exemption proviso contained in Section 210 was adopted by the District of Columbia Council to apply *only* to those property owners whose units were vacant on the effective date of the Act, viz., September 10, and that the exemption was created in order to exclude from the Act's coverage those situations in which there are no tenants to protect. Respondent maintains that the Council, by requiring such vacancy to have existed on January 1, thereby guarded against property owners' displacing tenants immediately prior to the Act's effective date on September 10th in order to avoid reach of the Act.

We are persuaded that respondent's reading of the Council's intention is correct in light of (1) the Council's statement of purpose (to protect tenants from displacement due to conversion of the units they inhabit); (2) the Council's declaration that "[t]he purposes of . . . [the Act] . . . favor resolution of ambiguity by . . . a court toward the end of strengthening the legal rights of the tenants . . . to the maximum extent permissible under law," D.C.Code 1981, § 45–1655; and (3) the legislative history of Section 210. Specifically, the Council's comments, while debating the enactment of the Act, express the intention to exempt units which were vacant on the Act's effective date and which had been vacant since January 1.[3]

Although the language of Section 210 viewed apart from the Act as a whole appears to support petitioners' position, we note that the plain meaning doctrine is subservient to a truly discernible legislative purpose. The use of legislative history as an aid in interpretation is proper when the literal words of the statute would bring

---

1. D.C.Code 1981, § 45–1611 et seq. Emergency legislation corresponding to this statute was in effect on August 10, 1980.

2. The Act requires, among others, that a majority of the tenants must vote in favor of conversion of the units they occupy into condominium or cooperative-type units.

3. The District of Columbia Council debate on Section 210 reveals the purposes behind the exemption for property vacant as of January 1, 1980:

> Mr. Ray: Mr. Chairman, we need a cut off date in there because if the building is vacant, there's no need to have an election. Basically, that is what it does.

> Mrs. Hardy: January 1, 1980, has already passed. It does allow properties that were vacant at that date, not to have to go through this.
>
> Mrs. Kane: * * * We can't go back and require a building that is vacant, that has no tenants, to comply with new procedures.
>
>     *    *    *    *    *    *
>
> Mr. Wilson: * * * With some people anticipating the legislation, they went to discontinuation of use in order to avoid the legislation. If they didn't do it before January 1, 1980, then they couldn't do it. And if it's before then, then it would discourage those people from going to a discontinuation of use.

about a result completely at variance with the purpose of the Act. *Aviation Consumer Action Project v. Washburn,* 175 U.S.App. D.C. 273, 535 F.2d 101 (1976). *See March v. United States,* 165 U.S.App.D.C. 267, 506 F.2d 1306 (1974). The express language of the Act here, as well as the legislative history, demonstrate that the legislative purpose does not allow extension of the exemption to petitioners. It would make no sense to construe the Act to *deny* the protection of the Act to those tenants in the District of Columbia who occupy rental units on the Act's effective date, September 10, solely because such units had been vacant some eight months earlier on January 1.

*Affirmed.*[4]

NEBEKER, Associate Judge, dissenting:

Prior to the Rental Housing Conversion and Sale Act of 1980, D.C.Code 1981, § 45–1611 *et seq.,* the District of Columbia Council passed the Condominium and Cooperative Conversion Stabilization Act of 1979, D.C.Law 3–143, 27 D.C.Reg. 958 (1981), which placed a moratorium on the conversion to condominium of any housing accommodation under the Condominium Act of 1976, D.C.Code 1978 Supp., § 5–1201 *et seq.* However, § 4(a)(4) of the Stabilization Act authorized the mayor to exempt "any housing accommodation with respect to which there was a substantial financial investment on or before May 22, 1979, in its conversion." Although the record before this court is incomplete, it appears that petitioners met the substantial financial investment requirement.

Petitioners testified at their hearing that they purchased a single family dwelling in 1977 which they later rented to their son. In early 1978, petitioners decided to convert the structure into six condominiums under

the Condominium Act of 1976. By November of 1978, they had secured all the necessary plans and building permits. Construction began in April of 1979, and soon the building was completely gutted. It was vacant on January 1, 1980, however, the costs of construction forced petitioners to later rent some of the units. In order to finance the construction, petitioners secured $100,000 in loans. Their stated purpose when they applied for the loans was to convert the building to condominiums. The moratorium on condominium conversion went into effect in February 1980, with its exemption for housing accommodations to which there had been a substantial financial investment on or before May 22, 1979, in its conversion. At their hearing, petitioners testified only that they began renovation in April of 1979 and secured $100,000 in loans for the construction. It is not clear from the record whether they actually had a substantial financial investment on or before May 22, 1979.

If petitioners did qualify for the exemption, the Council cannot now impose a retrospective requirement that they must have also kept their building vacant from January 1, 1980. "[A] property owner has no vested right in the continuance of any particular regulation. However, once regulations have been established, and so long as such regulations are in force, the state and its subdivisions are as much bound as the people to abide by such regulations." *Gibson v. City of Oberlin,* 171 Ohio St. 1, 167 N.E.2d 651, 653–54 (1960). *See also Smith v. Winhall Planning Commission,* 140 Vt. 178, 436 A.2d 760 (1981); *Union Oil Company of California v. City of Worthington,* 62 Ohio St.2d 263, 405 N.E.2d 277 (1980); *Board of Zoning App., City of Ft. Wayne v.*

---

4. Petitioners also assert that the Department had no authority to promulgate a regulation which modifies the express exemption by adding the requirement that exempted accommodations must have been continuously vacant since January 1, 1980. In light of our holding that the proper interpretation of the statute does not allow an exemption for petitioners, we find it unnecessary to address this argument.

We find no merit in petitioners' additional arguments in favor of reversal. Contrary to petitioners' argument, the findings of fact and conclusions of law were sufficient and were supported by substantial evidence. We also find that the Administrator of Housing and Business Resources was qualified to be hearing officer at the hearing at which evidence was produced and thus the Department decision is not invalid.

*Shell Oil Co.,* 164 Ind.App. 497, 329 N.E.2d 636 (1975); 16 C.J.S. *Laws Regulating Property and Business* § 239 (1956).

If petitioners could convert, with or without tenants, under the Stabilization Act of 1979, then they must be exempt from the January vacancy requirement. I would remand this case for further proceedings to determine whether the right to proceed with conversion had vested in petitioners.