Sharon R. TIBBS, Appellant,

v.

UNITED STATES, Appellee.

No. 84-314.

District of Columbia Court of Appeals.

Argued May 28, 1985.

Decided March 31, 1986.

Elaine Mittleman, Falls Church, Va., appointed by this court, for appellant.

Roscoe C. Howard, Jr., Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, and Steven I. Friedland, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, BELSON, and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of taking property without right, in violation of D.C. Code § 22–3816 (1985 Supp.). On appeal she contends that there was insufficient evidence to support her conviction. We disagree and affirm.

I◦

At about 8:00 p.m. on June 9, 1983, Metropolitan Police Officers James Whitaker and Gregory McCauley received a radio report that three people were selling stolen food stamps outside a Safeway supermarket. The broadcast gave a brief description of each person and the car in which they were seated. Whitaker and McCauley drove immediately to the supermarket and saw a car in its parking lot which matched the description they had heard over the radio. They notified the police dispatcher and were instructed to keep the car under observation.

After a few minutes, Officer Whitaker approached the car and asked the occupants—appellant and a man named Gregory Cohen—for identification, since the car was parked in a space reserved for handicapped persons. Whitaker also told them "that they were suspected of trying to sell possibly stolen food stamps." Almost immediately, however, another police officer came along and continued the conversation, because Whitaker had turned his attention to another woman, Alice Lytes, who had just come out of the supermarket. Officer Whitaker went inside and spoke with the manager, who told him that Lytes had just attempted to cash a government check without proper identification.

Whitaker went back outside and approached Lytes, who was then standing next to the car that he had been watching. Appellant and Cohen were still sitting in the car. When Whitaker asked Lytes whether she had attempted to cash a check, she replied that she had. The officer seized her purse, searched it, and found a District of Columbia government check in the amount of $189.56. The check was dated June 2, 1983, and was made payable to "Elvira May Parsons." Whitaker asked Lytes if she were Parsons. Lytes admitted that she was not but said that appellant had given her the check. Appellant confirmed this, stating that Parsons was her roommate, and that Parsons had given her the check and had asked her to cash it. Several days later, after an investigation had revealed that this was untrue, appellant and Lytes were arrested on warrants charging them with receiving stolen property. That charge was eventually reduced to taking property without right.

At trial Elvira Parsons testified that she customarily received a medical assistance check in the amount of $189.56 from the District every month, and that these checks were usually collected from the mailbox by the resident manager of her apartment building and brought to her door. She said that she was supposed to receive one such check on June 5, 1983, but that she did not receive it. She then identified the check that had been seized from Lytes' purse as the type of check she normally received from the District. She stated, however, that the signature on the back of the check—upon which her name and address were typed—was not her signature; the writing was "nothing like my handwriting." Finally, she said, she did not give appellant or Lytes permission to endorse the check.

Appellant testified that she knew nothing about the check, had never seen it before, and did not know where it came from. Her co-defendant Lytes, however, took the stand in her own defense and contradicted appellant's testimony. Lytes testified that

appellant had given her the check, and had told her that it belonged to one of her neighbors who did not have proper identification. She claimed that she had simply offered to try to cash the check because she had a check-cashing card at the Safeway.

At the close of the evidence, the court found appellant guilty of taking property without right:

> Insofar as Ms. Tibbs is concerned, again I think that's more of a credibility question and as I indicated before, the police officers did state that Ms. Tibbs had said she had received the check from Ms. Parsons and that Ms. Parsons had given her permission to cash the check. Ms. Parsons took the stand and denied that. I find that both Ms. Parsons and the police officers were truthful. Therefore, I find beyond a reasonable doubt that Ms. Tibbs had taken without right the check of Ms. Parsons.

 Appellant now claims that there was insufficient evidence to support the court's finding. Her claim is based, in part, upon her contention that the government was required—and failed—to prove that she took the check from the possession of the complainant, Mrs. Parsons. While we agree that the government failed to prove that appellant took the check from the possession of the complainant, we hold that the statute under which appellant was convicted requires no such proof.

## II

This court has never defined the elements of the statutory crime of taking property without right. Indeed, there are almost no decided cases under either the present statute, D.C. Code § 22–3816 (1985 Supp.), or its predecessor, D.C. Code § 22–1211 (1981), which was enacted in 1893 and last amended in 1906. Only two legal principles can be distilled from the existing case law. First, we held very recently in *Fussell v. United States*, 505 A.2d 72, 73 (D.C.1986), that "[p]roperty cannot be taken 'without right' if it is taken with the knowledge and consent of the owner, or one authorized to consent on his behalf." *See also Craig v. United States*, 490 A.2d 1173, 1178 (D.C.1985). Second, it is established that to convict a person of taking property without right, the government need not prove any specific intent; a general intent to commit the proscribed act is all that the law requires. *Fogle v. United States*, 336 A.2d 833, 835 (D.C.1975); *Richardson v. United States*, 131 U.S.App.D.C. 168, 170, 403 F.2d 574, 576 (1968). But no reported case has ever articulated the elements of that proscribed act.

To determine what those elements are, we look to the obvious source: the statute itself. D.C. Code § 22–3816 (1985 Supp.) states:

> A person commits the offense of taking property without right if that person takes and carries away the property of another without right to do so.[1]

In construing this section of the code, we start from the premise that "the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) (citations omitted); *accord, e.g., Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc); 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION §§ 46.01, 46.04 (4th ed. rev. 1984). If the statute is clear and unambiguous, a court may not look beyond it but must give effect to its plain meaning, unless to do so would produce "absurd results," *District of Co-*

---

1. "Property of another" is defined, in pertinent part, as "any property in which a government or a person other than the accused has an interest which the accused is not privileged to interfere with or infringe upon without consent, regardless of whether the accused also has an interest in that property." D.C. Code § 22–3801 (4) (1985 Supp.).

*lumbia National Bank v. District of Columbia,* 121 U.S.App.D.C. 196, 198, 348 F.2d 808, 810 (1965) (citation omitted), or "bring about a result completely at variance" with the statutory purpose. *Dyer v. D.C. Department of Housing and Community Development,* 452 A.2d 968, 969–970 (1982) (citations omitted); *see Peoples Drug Stores, Inc. v. District of Columbia, supra,* 470 A.2d at 754–755.

The statute under which appellant was convicted is clear and unambiguous.[2] Parsing the statutory language, we conclude that the crime of taking property without right has four elements. To obtain a conviction, the government must prove that the defendant (1) took and (2) carried away (3) the property of another, as defined in section 22–3801, (4) without right to do so. There is nothing in the statute to suggest that the crime is committed only by one who takes property from the possession of another; under section 22–3816, possession is plainly irrelevant. Enforcement of the statute according to its express terms will not produce "absurd results," nor will it "bring about a result completely at variance" with the statutory purpose. Accordingly, we hold that the statute does not require proof that the defendant took the property from the possession of the complainant. Thus we need not concern ourselves with the knotty question of whether the check which appellant gave to Lytes had ever been in the possession of Mrs. Parsons, and the government's failure to prove possession is of no consequence.

Notwithstanding the statute, appellant relies in part on the standard jury instruction on taking property without right, which lists as the first element of the offense "[t]hat the defendant took property from the possession of the complainant...." Criminal Jury Instructions for the District of Columbia, No. 4.68 (3d ed. 1978). That instruction has never been approved by this court, however, and we now expressly disapprove it. Almost every instruction in the red book[3] is based on either a statute or abundant case law, or both; the editors of the red book are commendably thorough and meticulous in their scholarship. In the case of instruction No. 4.68, however, the editors concede in their comment to the instruction that they simply lifted the language almost verbatim from the instruction on larceny, a crime which does (or did) require proof of possession.[4] The instruction has no support whatever in any reported case on taking property without right. It is manifestly inconsistent with both the present statute under which that crime is prosecuted, D.C. Code § 22–3816 (1985 Supp.), and the former statute, D.C. Code § 22–1211 (1981),

**2.** The legislative history of the statute, on the other hand, is ambiguous and inconsistent. While it states that the government is required to prove that the "offender took property from the possession of another," *see* Extension of Comments on Bill No. 4–133: The District of Columbia Theft and White Collar Crimes Act of 1982, submitted by Councilmember David A. Clarke, at 35 (July 20, 1982), it also states that taking property without right is a lesser included offense of theft, *id.* at 36, which does not necessarily require such proof. *See* D.C. Code § 22–3811 (a) (1985 Supp.). Given this ambiguity, we conclude that there is no "truly discernible legislative purpose," and thus we must give effect to the plain meaning of the statute without reference to the legislative history. *Dyer v. D.C. Department of Housing and Community Development, supra,* 452 A.2d at 969.

**3.** The standard instructions are compiled by the Young Lawyers Section of the Bar Association of the District of Columbia. The volume in which they are published, commonly known as the "red book" because of its scarlet cover, first appeared in 1966 and is currently in its third edition. A fourth edition is now in preparation.

**4.** *See Moss v. United States,* 368 A.2d 1131, 1133 (D.C.1977); *Levin v. United States,* 119 U.S.App.D.C. 156, 159, 338 F.2d 265, 268 (1964), *cert. denied,* 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965). The larceny statutes, D.C. Code §§ 22–2201 and 22–2202 (1981), were repealed in 1982 and supplanted by the new theft statutes, D.C. Code §§ 22–3811 and 22–3812 (1985 Supp.). *See generally Eldridge v. United States,* 492 A.2d 879, 881 & n. 2 (D.C.1985).

which contained virtually identical language. In this rare instance, the editors of the red book erred.

### III

█ We also reject appellant's ancillary contention that there was no evidence that she took and carried away the property. This argument ignores the well established rule that "where an accused is found in exclusive possession of recently stolen property and the possession is unexplained or unsatisfactorily explained, the trier of fact is allowed to infer that the accused participated in its theft." *Irby v. United States*, 342 A.2d 33, 38 (D.C.1975) (citation omitted); *see Goins v. United States*, 475 A.2d 362, 364 (D.C.1984); *United States v. Johnson*, 140 U.S.D.C. 54, 58–59, 433 F.2d 1160, 1164–1165 (1970).[5]

The evidence in this case, viewed in the light most favorable to the government,[6] established that a check made out to Mrs. Parsons was dated June 2, that she normally would have received it in the mail on or about June 5 but that she never received it, and that on June 9 appellant gave the check to Lytes and asked her to cash it. On these facts the trial court, as trier of fact, could reasonably find that appellant was in possession of a recently stolen check, and thus it was entitled to draw the inference that appellant participated in the taking and asportation of that check.[7]

*Affirmed.*

5. "Exclusive possession" is "no more than judicial shorthand for the ... concept that the accused must bear a distinctive relationship to the property before the inference is allowed." *United States v. Johnson, supra*, 140 U.S.App.D.C. at 58, 433 F.2d at 1164.

6. *See, e.g., McClain v. United States*, 460 A.2d 562, 567 (D.C.1983); *Crawford v. United States*, 126 U.S.App.D.C. 156, 375 F.2d 332 (1967); *Curley v. United States*, 81 U.S.App.D.C. 389, 160 F.2d 229, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed.2d 1850 (1947).

7. *White v. United States*, 300 A.2d 716 (D.C. 1973), on which appellant relies, does not sup-

port her argument. In *White* the defendant was convicted of grand larceny and burglary. This court reversed his burglary conviction because the government had failed to prove that a burglary had in fact occurred. We affirmed the larceny conviction, however, holding that the defendant's possession of recently stolen property permitted the jury to infer that he was guilty of that offense. In the instant case the government proved that appellant was in possession of the recently stolen check, so that the trial court, like the jury in *White*, was permitted to draw the inference that appellant participated in its theft.