Willie S. MOORER, Appellant

v.

UNITED STATES, Appellee.

No. 01–CF–1409.

District of Columbia Court of Appeals.

Argued March 9, 2004.

Decided Feb. 17, 2005.

Andrea Roth, Public Defender Service, with whom James Klein, Sandra Levick, and Timothy O'Toole, Public Defender Service, were on the brief, for appellant.

Allison Harnisch Leotta, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fish-

er, Thomas J. Tourish, Jr., and John P. Mannarino, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Appellant Willie Moorer was indicted for armed carjacking, armed kidnapping, possession of a firearm during a crime of violence ("PFCV") associated with the carjacking, and PFCV associated with the kidnapping. After the close of the government's evidence, the trial court granted appellant's motion for judgment of acquittal on the armed kidnapping count and the PFCV count associated with the kidnapping. At the end of the trial, the jury found appellant not guilty of armed carjacking, not guilty of the lesser included offense of assault with a dangerous weapon, not guilty of PFCV associated with the carjacking, but guilty of the lesser included offense of (unarmed) carjacking. On appeal from the judgment of conviction, appellant argues (1) that the trial court erred in determining that the offense of taking property without right is not a lesser included offense of carjacking, and (2) that the court erred in concluding that it had no discretion to impose a sentence of less than seven years for carjacking. We reject both arguments and affirm the conviction and sentence.

I

During the evening of February 9, 2001, Steven Trowell was driving to his mother's house with his girl friend, Quantana Davis, in his dark blue Toyota Camry. At the intersection of Fourth Street and Rhode Island Avenue, N.E., Trowell saw his friend, Kenneth Lewis, standing on the opposite side of the street. Trowell made a U-turn and pulled his car up to the spot where Lewis was standing. Trowell then got out of the car to speak with Lewis for a few minutes, leaving Ms. Davis sitting in the front passenger seat. The car's windows were closed, and the engine was left running.

As Trowell and Lewis were conversing, appellant approached them. Trowell and appellant did not formally know each other, but they had seen each other around the neighborhood. According to Trowell, appellant appeared drunk or high and "look[ed] like he was not having a normal day." Standing about twelve to fifteen feet away, appellant asked Trowell if he had a cigarette, to which Trowell replied that he did not smoke.

Appellant then walked closer to Trowell and said, "Look me in the face and tell me you don't smoke." Trowell responded that he "didn't have to do it" and turned back toward his friend Lewis, attempting to ignore appellant. As he looked away from appellant, Trowell said, "Man, I've got nothing to do with you. I got nothing to tell you; you ain't nobody to me."

Appellant then announced that he was "going to drive [Trowell's] car." Trowell "just told him he wasn't" and opened the left front door, placing his hand on the door. Appellant again declared to Trowell that he was going to drive Trowell's car ("basically he just told me"), and again Trowell replied "that he wasn't driving my car." Then appellant pulled a gun out of his waistband and held it "with his hand down to the side of his waist." For a third time, appellant told Trowell that he was going to drive the car, and Trowell again "told him that he wasn't."

Appellant then pointed the gun directly at the center of Trowell's forehead and said that he was "going to show [Trowell] how much of a bitch ass [expletive]" Trowell really was. With the gun still pointed

at his head, Trowell finally let go of the car door and stepped away from it. Appellant "flop[ped] in the car and slammed it in gear and drove off" very quickly, even though Ms. Davis was still in the front passenger seat. Trowell ran after the car until appellant made a right turn onto Fifth Street, N.E., at the corner of Rhode Island Avenue. At that point he stopped running.

Ms. Davis had been unaware of the confrontation between Mr. Trowell and appellant because she was listening to the radio, but she did notice that there were three people talking outside the car. Even after the car started to drive away, Ms. Davis at first failed to realize that someone other than Trowell was driving until the car "took off at a high speed" around a corner. This prompted her to look to her left and discover that appellant was the driver. Davis was "kind of nervous,"[1] but she was not afraid that someone unknown to her was driving because she thought "maybe [Trowell] had asked him to test drive the car because it was new." Appellant and Ms. Davis exchanged brief greetings, and appellant told her that "he was going to show [her] bitch ass boy friend that he wasn't playing." After appellant drove the car another block, he informed Davis that he had "to go kill somebody" and asked her if she wanted to come along. Davis said no, so he stopped and let her out of the car at Fifth and W Streets, N.E. Davis then walked to Trowell's mother's house a couple of blocks away. Ms. Davis never saw a weapon in appellant's possession, nor did appellant tell her that he had a weapon.

After appellant drove off in the car and Trowell's foot pursuit failed, Trowell ran to his mother's house and telephoned 911.

While he was on the telephone with the police, Ms. Davis walked into the house. The police arrived within minutes. Trowell's car was found a short time later around the corner from the place where appellant had taken it.

Appellant took the stand in his own defense. He admitted that he was "kinda drunk" and "high" when he first saw Trowell and Lewis engaged in conversation on the street corner. Appellant said he first approached them to ask Trowell for a cigarette. The three men then stood together for a few minutes, talking back and forth. As their conversation progressed, appellant asked if he could drive Trowell's car, but Trowell "said no." According to appellant, Trowell "had an attitude" and "started talking smart." So, "just to make him mad" and to "mess with him," appellant grabbed the car door, jumped into the car, and drove off, intending only to "go around the block and come back." Appellant specifically testified that he did not have a gun that night and did not use a gun to take possession of the car or "use any force at all."

After driving the car away from the corner of Fourth and Rhode Island, appellant noticed Ms. Davis sitting next to him in the passenger seat. Although he could not recall their conversation, he did remember stopping the car to let her out. He then continued driving the car "around the block" and left it in a parking lot close to the corner where he had taken it.

After all the evidence was in, counsel and the court discussed whether the jury should be instructed on any lesser included offenses. Defense counsel asked the court to instruct on taking property without right ("TPWR") as a lesser included of-

---

1. Ms. Davis thought that appellant was high and drunk, particularly because he smelled of alcohol.

fense of carjacking. Although the court was initially inclined to do so, the government objected, citing *Pixley v. United States,* 692 A.2d 438 (D.C.1997). The court took the issue under advisement and later ruled that, according to *Pixley,* TPWR is not a lesser included offense of carjacking. It therefore denied defense counsel's request for a TPWR instruction.

A few weeks after the trial, the court sentenced appellant to seven years' imprisonment, the mandatory minimum sentence under the carjacking statute,[2] to be followed by three years of supervised release.[3] While imposing sentence, the court said that it did not have "any discretion here" in determining the minimum sentence. The court added, however:

> I do not believe that this is a case that warrants seven years of mandatory time. I believe it to be completely disproportionate to the facts of this case, but I am a judge bound to apply the law, and I will apply it.

## II

■ Appellant argues that the trial court erred in concluding that TPWR is not a lesser included offense of carjacking. The standard for determining whether one criminal offense is included within another is well settled; we apply the so-called "elements" test. *Lee v. United States,* 668 A.2d 822, 825 (D.C.1995) (citing *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)); *Price v. United States,* 602 A.2d 641, 644 (D.C. 1992); *see Leak v. United States,* 757 A.2d 739, 740 (D.C.2000) ("[t]he standards for

our review are well-established" in determining what constitutes a lesser included offense). Under the elements test, one offense is included within another if "(1) the lesser included offense consists of some, but not every element of the greater offense; and (2) the evidence is sufficient to support the lesser charge." *Id.* (citation omitted); *accord, Plater v. United States,* 745 A.2d 953, 956–957 (D.C.2000); *Rease v. United States,* 403 A.2d 322, 328 (D.C. 1979). Therefore, the elements of the relevant crimes "shape the analysis." *Leak,* 757 A.2d at 740.[4]

■ The first part of the elements test calls for "a textual comparison of criminal statutes," using the "normal principles of statutory construction." *Carter v. United States,* 530 U.S. 255, 261–263, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (citing *Schmuck,* 489 U.S. at 720, 109 S.Ct. 1443); *see Lee,* 668 A.2d at 826. Under such a comparison, TPWR is not a lesser included offense of carjacking because (1) TPWR contains the element of asportation and carjacking does not, and (2) asportation is an independent element of TPWR and—contrary to appellant's argument—has not been folded into the separate taking element of TPWR. In addition, (3) this court in *Pixley* has already examined the language and the legislative history of the carjacking statute and determined that TPWR is not a lesser included offense of carjacking, and (4) TPWR was not specifically made a lesser included offense of carjacking by our local legislature, the Council of the District of Columbia, con-

---

2. The government requested only the mandatory minimum.

3. Appellant also had to serve two years of backup time from a previous conviction.

4. Appellant argues that we should apply the elements test "backwards," and that under a

"backwards" elements test TPWR would be a lesser included offense of carjacking. We have difficulty following the logic of appellant's argument; in any event, it does not conform to the way in which the elements test is applied in this jurisdiction. *See Lee,* 668 A.2d at 826.

trary to what the Council did in its earlier enactment of the theft statute.

■ The elements of TPWR were set forth in *Tibbs v. United States,* 507 A.2d 141, 143–144 (D.C.1986). "To obtain a conviction [of TPWR], the government must prove that the defendant (1) took and (2) carried away (3) the property of another . . . (4) without right to do so."[5] *Id.* at 144; *accord, e.g., Schafer v. United States,* 656 A.2d 1185, 1188 (D.C.1995). In *Tibbs* the court reached this conclusion through a plain reading of the "clear and unambiguous" TPWR statute. *Tibbs,* 507 A.2d at 144.[6] The elements of carjacking[7] were set forth in *Allen v. United States,* 697 A.2d 1 (D.C.1997). "[T]o establish a violation of the carjacking statute, the prosecution must prove beyond a reasonable doubt that the defendant (1) knowingly or recklessly; (2) by force or violence; (3) took from another person; (4) immediate actual possession; (5) of a person's vehicle; or (6) attempted to do so." *Id.* at 2.

A comparison of the elements for each crime, as established by both the case law and the respective statutes, quickly reveals that TPWR contains the element of asportation (*i.e.,* "carrying away"), whereas carjacking does not. *See Pixley,* 692 A.2d at 439–440. Carjacking simply requires possession or control (or attempted possession or control) of the car. Neither the statute nor the case law requires the government to prove asportation—or, indeed, any movement at all—of the car. TPWR, on the other hand, requires a carrying away of the property—that is, possession *plus* asportation. Appellant, acknowledging this discrepancy between the elements of the two crimes, argues that asportation is an "implied" element of carjacking and that the elements of carjacking contain "just as much of an asportation requirement as the robbery statute"—and hence the TPWR statute. We are not persuaded.

In *Pixley* this court specifically rejected an argument "that proof of carjacking will always entail proof of robbery[8] as a lesser included offense." 692 A.2d at 440. We held that "while robbery requires a carrying away or asportation, carjacking by its terms does not,"[9] noting that carjacking

---

5. D.C.Code § 22–3216 (2001) defines the offense of TPWR: "A person commits the offense of taking property without right if that person takes and carries away the property of another without right to do so."

6. In *Tibbs* we found the legislative history of the statute to be "ambiguous and inconsistent," leading us to conclude that there was "no truly discernible legislative purpose." We therefore ascertained the crime's elements solely from the text of the statute. *Tibbs,* 507 A.2d at 144 n. 2.

7. Carjacking is defined in D.C.Code § 22–2803(a)(1) (2001):

A person commits the offense of carjacking if, by any means that person knowingly or recklessly by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, or attempts to do so, shall take from another person immediate actual possession of a person's motor vehicle.

8. Robbery is defined in D.C.Code § 22–2801 (2001):

Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery.

While no asportation requirement is expressly set forth in this statute, it has been held that the statute was meant to codify the common law crime of robbery, *Neufield v. United States,* 73 App. D.C. 174, 189, 118 F.2d 375, 390 (1941), which does have an asportation element. *See Simms v. United States,* 634 A.2d 442, 447 n. 2 (D.C.1993).

9. We reached this conclusion despite a statement in the legislative history which described carjacking as the "robbery of a motor vehicle." *Pixley,* 692 A.2d at 440.

"can be committed by putting a gun to the head of the person in possession and ordering the person out of the car." *Id.* In *Allen* the court again declared that asportation is not required for carjacking: "A defendant could commit the crime of carjacking ... by simply forcing the owner out of an automobile, and by then burning the vehicle (or, perhaps, stripping it) without taking, using, operating or removing it from its location." *Allen,* 697 A.2d at 2.

Appellant asserts that the elements of carjacking as stated in *Pixley* and *Allen* are not correct because the robbery and carjacking statutes contain similar language and that the Council meant for these crimes to have similar elements. This argument is without merit. "[I]n interpreting a statute, 'we first look to the plain meaning of its language, and if it is clear and unambiguous and will not produce an absurd result, we will look no further.'" *Pixley,* 692 A.2d at 440 (quoting *In re D.H.,* 666 A.2d 462, 469 (D.C.1995)). Because the court in *Pixley* found the statute defining the "new criminal offense" of carjacking to be clear, it did not even need to examine the legislative history of the carjacking statute. Nevertheless, the court anticipated the very argument that appellant makes here and examined the legislative history to dispel any lingering doubts on the subject:

> Still, from the similarity of the two offenses it might be argued that carjack-ing was meant to incorporate the elements of robbery, just as the robbery statute embodies (without saying so) every common law element of that crime [such as asportation]. But the single equation of carjacking with robbery in the Committee Report [the reference to carjacking as "robbery of a motor vehicle," *supra* note 9] is too weak to support that contention.

*Pixley,* 692 A.2d at 440. Thus it is clear that this court in *Pixley* has already determined, after examining both the statutory language and the legislative history, that the Council did not intend to include—and did not include—offenses such as robbery or TPWR within the definition of carjacking. *Pixley* is therefore binding authority under *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), on the question of whether TPWR is a lesser included offense of carjacking.

Appellant also argues that the asportation element of TPWR is "purely nominal" and has been "collapsed" into the taking element of TPWR and other crimes requiring asportation. Appellant is mistaken.[10] In *Newman v. United States,* 705 A.2d 246 (D.C.1997), this court examined the elements of robbery and noted that possession and asportation were two different elements that must be (and in that case were) separately proved. At a minimum, a robber must both possess the item being stolen and move it a "minimal" distance for asportation (in that case, a wallet

---

Additionally, carjacking by definition includes an attempt, whereas TPWR does not.

10. Appellant relies on two cases which, he maintains, support his argument: *Allen v. United States,* 377 A.2d 65 (D.C.1977), and *Groomes v. United States,* 155 A.2d 73 (D.C. 1959). His reliance is misplaced; neither case suggests that asportation has been incorporated into the taking element. *See Allen,* 377 A.2d at 67 (holding that "at least some asportation is an element of the crime" of unauthorized use of a vehicle); *Groomes,* 155 A.2d at 75 (holding, in a shoplifting case brought under the former petit larceny statute, which required proof of both taking and asportation, that these elements were "satisfied where the evidence shows that the property was taken from the owner *and* was concealed or put in a convenient place" for subsequent removal from the store (emphasis added)).

was moved a few feet). *Id.* at 264. The recent *Carter* case also illustrates that "taking" and "taking and carrying away" are not the same. The Supreme Court held in *Carter* that the offense defined in subsection (b) of the federal bank robbery statute, 18 U.S.C. § 2113, was not included within the offense defined in subsection (a) because subsection (b) made it a crime to "take and carry away" money, while subsection (a) made it a crime only to "take" money. 530 U.S. at 261–262, 120 S.Ct. 2159. Indeed, *Pixley* itself demonstrates that asportation has not been folded or "collapsed" into the taking element, since the court in *Pixley* held that the crime of robbery does not merge with carjacking specifically because robbery has an asportation element and carjacking does not. 692 A.2d at 440. *See also Simmons v. United States,* 554 A.2d 1167, 1171 n. 9 (D.C.1989) (stating that an element of TPWR is asportation, even though it may be proved by "the slightest moving of an object from its original location").

Finally, appellant maintains that TPWR's asportation element should be overlooked in determining whether it is a lesser included offense of carjacking because that element was overlooked when TPWR was made a lesser included offense of theft.[11] We cannot agree. TPWR was made a lesser included offense of theft by the specific legislative act of the Council of the District of Columbia. The Council combined several theft-type offenses previously in the criminal code into a single offense called theft in 1982. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY ON BILL 4–133,

THE "THEFT AND WHITE COLLAR CRIMES ACT," at 8–11 (July 20, 1982). Included in the Committee Report was specific language making clear the Council's intent that TPWR remain a lesser included offense of theft (formerly known as larceny):

> Under current law, the offense of taking property without right has been treated as a lesser included offense of larceny .... Conduct which constitutes the offense previously known as larceny has been included in the consolidated theft provision of this bill. Consequently, it is intended that the offense of taking property without right continue to be treated as a lesser included offense of the consolidated theft offense.

*Id.* at 36. No comparable expression of legislative intent can be found in the legislative history of the carjacking statute. *See Pixley,* 692 A.2d at 440.

To sum up: Because carjacking lacks the element of asportation which is required to prove TPWR, because there is prior case law which makes clear that TPWR is not a lesser included offense of carjacking, because possession and asportation are separate elements and not a single combined element, and because the Council did not intend to make (and did not make) TPWR a lesser included offense of carjacking, we hold that TPWR is not a lesser included offense of carjacking.[12]

## III

■ Appellant argues that the carjacking statute "does not forbid a Superior Court judge from granting probation to a

---

11. Theft does not have an asportation element. *See* D.C.Code § 22–3211 (2001) (defining theft); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.38 (4th ed. rev.2002) (listing elements of theft).

12. Because a comparison of TPWR and carjacking under the elements test fails the test's first part, there is no need to consider the second part, namely, whether "the evidence is sufficient to support the lesser charge." *Leak,* 757 A.2d at 740.

person convicted of carjacking." We hold, to the contrary, as did the trial court, that the statute specifically forbids probation—or any sentence less than the mandatory minimum term of imprisonment for seven years—in a carjacking case.

In interpreting a statute, this court first looks "to the plain meaning of its language, and if it is clear and unambiguous and will not produce an absurd result, we will look no further." *Pixley*, 692 A.2d 438, 440; *accord, e.g., District of Columbia v. Gallagher*, 734 A.2d 1087, 1091 (D.C.1999). The statute prescribing the penalty for carjacking is D.C.Code § 22–2803 (2004 Supp.). It provides in part:

> (a)(2) A person convicted of carjacking shall be fined not more than $5,000 and be imprisoned for a mandatory-minimum term of not less than 7 years and a maximum term of not more than 21 years, or both.
>
> \* \* \* \* \* \*
>
> (c) Notwithstanding any other provision of law, a person convicted of carjacking shall not be released from prison prior to the expiration of 7 years from the date of the commencement of the sentence, and a person convicted of armed carjacking shall not be released from prison prior to the expiration of 15 years from the date of the commencement of the sentence.

The language of this statute is clear: a person convicted of carjacking *must* receive a term of at least seven years' imprisonment, and must serve each and every day of those seven years in prison. There is no other reasonable way in which the statute can be construed. The words "shall be ... imprisoned for a mandatory-minimum term of not less than 7 years" in subsection (a)(2), read in context with subsection (c), make any other interpretation impossible. In particular, the phrase "Notwithstanding any other provision of law" compels the conclusion that D.C.Code

§ 16–710 (2001), which is the only statute authorizing the Superior Court to place any convicted defendant on probation, cannot be applied in carjacking cases.

This court, in a case involving the penalty for first-degree murder, has previously rejected essentially the same argument that appellant makes here. In *Beale v. United States*, 465 A.2d 796 (D.C.1983), *overruled in part on other grounds by Winfield v. United States*, 676 A.2d 1 (D.C. 1996) (en banc), the defendant was convicted of first-degree murder and sentenced to life imprisonment. At sentencing, the trial judge in *Beale*—like the judge in this case—refused even to consider probation as a sentencing alternative, concluding that he "had no option" and that he *"must impose a sentence of life imprisonment." Id.* at 805 (emphasis in original). The sentencing statute for first-degree murder at the time read in part as follows:

> (a) The punishment for murder in the first degree shall be life imprisonment.
>
> (b) Notwithstanding any other provision of law, a person convicted of first-degree murder and upon whom a sentence of life imprisonment is imposed shall be eligible for parole only after the expiration of 20 years from the date he commences to serve his sentence.

D.C.Code § 22–2404 (1981) (recodified as amended at D.C.Code § 22–2104 (2001)). Observing that in this statute Congress had commanded that a person convicted of first-degree murder serve at least twenty years in prison before even being eligible for parole, we concluded that "it would be impossible for this court in the face of such congressional action to authorize a sentencing judge who sentences a first-degree murderer to life imprisonment then to suspend execution of this sentence and to place such defendant on probation." *Id.* at 806; *see also Sanker v. United States*, 374 A.2d 304, 308 (D.C.1977) (noting that this statute "restrict[s] even parole in first-

degree murder cases"). We reach the same conclusion here. Given the virtually identical operative language in the carjacking penalty statute, we discern in it a clear intent by the legislature—in this instance, the Council of the District of Columbia—to require a person convicted of carjacking to spend at least seven years behind bars, in all cases, with no exceptions.

Thus there is no need to examine the legislative history of the carjacking statute, but we do so anyhow to bolster our conclusion that its meaning is clear. Even when we are not faced with "textual uncertainty" in a statute, this court may examine "extrinsic evidence, such as legislative history, as an aid in discerning its meaning" or as a means of "provid[ing] context to our primary analysis of the language of the statute." *Cass v. District of Columbia*, 829 A.2d 480, 486 & n. 9 (D.C. 2003).

The legislative history of the carjacking statute dispels any possible doubt about the meaning of its sentencing requirements. The language at issue, now codified as section 22–2803(c), was added to the statute in 2000, first by a temporary "emergency" enactment [13] and then by superseding permanent legislation, the Sentencing Reform Amendment Act of 2000, D.C. Law 13–302, § 4(f), 47 D.C. Register 7249 (2000).[14] The Council made its intent for this provision clear in its Committee Report:

> The Committee Print adds language that is not in Bill 13–696 to make the carjacking statute consistent with the amended version of the first degree murder penalty statute. Like first-degree murder, carjacking and armed carjacking require the imposition of a mandatory minimum sentence. *The court does not have the discretion to place such a person on probation, to suspend imposition or execution of sentence, or to impose a term of imprisonment of less than 7 years for carjacking or 15 years for armed carjacking.* This amendment makes clear that a person convicted of carjacking or armed carjacking cannot be released from prison prior the expiration of 7 or 15 years respectively from the date of the commencement of the sentence.

COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY ON BILL 13–196, THE SENTENCING REFORM AMENDMENT ACT, at 18 (May 25, 2000) (emphasis added). This legislative history could not be clearer. Section 22–2803(c) is plainly intended to require a mandatory minimum sentence of seven years for unarmed carjacking, with no opportunity for probation or a suspended sentence. While one may question the wisdom of such an inflexible penalty, neither the trial court nor this court has any power to disregard it. Any effort to soften the impact of this sentencing provision must be addressed to the legislature, not the courts.

IV

For the foregoing reasons, appellant's conviction, including the mandatory minimum sentence, is

*Affirmed.*

---

**13.** D.C. Act 14–2, § 4(f), 48 D.C. Register 2239 (2001).

**14.** Both the emergency act and the permanent law were expressly made applicable to all offenses committed on or after August 5, 2000. *See* D.C. Act 14–2, § 11, 48 D.C. Register at 2249; D.C. Law 13–302, § 11, 47 D.C. Register at 7259. The crimes with which appellant was charged took place on February 9, 2001.